## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lyon Financial Services, Inc.,                     Civil No. 07-724 (DWF/SRN)
a Minnesota corporation d/b/a
US Bancorp Business Equipment
Finance Group,

                Plaintiff,

v.                                                                    **MEMORANDUM**
                                                            **OPINION AND ORDER**
bioMérieux, Inc. and PST Consultants,
jointly and severally,

                Defendants,

and

bioMérieux, Inc.,

                Third-Party Plaintiff,

v.

Scott Waddell,

                Third-Party Defendant,

and

bioMérieux, Inc., jointly and severally,

                Cross-Claimant,

v.

PST Consultants, Inc., jointly and severally,

                Cross-Defendant.

---

John D. Docken, Esq., and Troy C. Kepler, Esq., US Bancorp Business Equipment Finance Group, counsel for Plaintiff.

Anne W. Awsumb, Esq., and Glen E. Purdue, Esq., Purdue & Awsumb, PA; Joshua M. Krasner, Esq., and Marcus C. Hewitt, Esq., Maupin Taylor, PA; and Kimberly D. Bartman, Esq., Williams Muller Maupin Taylor, counsel for Defendant and Third-Party Plaintiff bioMérieux, Inc.

Barbara P. Berens, Esq., Erin K. Fogarty Lisle, Esq., and Jennifer S. Pirozzi, Esq., Kelly & Berens, PA, counsel for Defendant PST Consultants, Inc. and Third-Party Defendant Scott Waddell.

---

## INTRODUCTION

The above-entitled matter is before the Court pursuant to a Motion to Transfer Venue to the United States District Court for the Middle District of North Carolina brought by Defendant bioMérieux, Inc. ("bioMérieux"), a Motion to Dismiss or, in the Alternative, Transfer Venue brought by Defendant PST Consultants, Inc. ("PST") and Third-Party Defendant Scott Waddell, and a Motion to Dismiss Cross-Claim brought by PST. For the reasons set forth below, the Court denies the motions.

## BACKGROUND

Lyon Financial Services, Inc. ("Lyon") is a Minnesota corporation with its principal offices in Marshall, Minnesota. Lyon is a commercial lease financing company. BioMérieuxis a Missouri corporation with its principal place of business in Durham, North Carolina. BioMérieux designs, develops, manufactures, and markets diagnostic

systems used in medical and industrial applications.  PST, a North Carolina corporation,

supplies and services office equipment.  PST's principal place of business is in Raleigh,

North Carolina.  Scott Waddell, the president of PST, resides in Raleigh, North Carolina.

As a commercial lease financing company, Lyon maintains relationships with

vendors of office equipment.  These vendors may offer their customers equipment to be

financed by Lyon through an equipment lease if the customers do not wish to purchase

the equipment outright.  The financing process begins when a customer completes an

application for financing, which a vendor forwards to Lyon at its principal place of

business in Minnesota.  Lyon then reviews the application and the customer's credit and

determines whether or not to approve the application.  If Lyon approves the application,

Lyon prepares the necessary documentation and sends it to the vendor to be completed.

Once the documentation is executed, Lyon pays the vendor for the equipment either in

one payment or in installments.

Lyon has financed such equipment leases for PST's customers since 2001.  During

the course of their relationship, PST has sent Lyon at its Minnesota office approximately

142 leases for approval and funding.  Lyon has approved and funded approximately

seventy-six of these leases for a total amount funded of approximately $3,226,544.  In

furtherance of their relationship, Lyon and PST entered into a Vendor Agreement in

February 2005, which provides Lyon with the first right to review all of the transactions

where a customer approaches PST for lease financing of copiers and other related office

equipment.  As part of the Vendor Agreement, PST consented to the jurisdiction of any

3

court selected by Lyon, including State and Federal Courts in Minnesota to resolve disputes regarding the Vendor Agreement.

During the course of Lyon and PST's business relationship, Waddell has visited Minnesota once.  Specifically, in 2003 or 2004, Waddell traveled to Minnesota to visit one of Lyon's sales representatives.  Waddell played in a golf tournament with the sales representative and visited the Lyon offices in Marshall during his visit, but contends that he did not conduct any business while in Minnesota.

This case arises out of four equipment lease agreements ("the Lease Agreements") between Lyon and bioMérieux.  PST acted as the vendor on the Lease Agreements, and, as such, arranged the Lease Agreements and supplied certain equipment pursuant to the Lease Agreements.[1]  BioMérieux signed the four Lease Agreements on October 21, 2004, December 15, 2004, November 30, 2005, and January 26, 2006, respectively.  Lyon signed each Lease Agreement either on the same day or within a few days after bioMérieux signed each one:  October 25, 2004, December 17, 2004, November 30, 2005, and January 30, 2006, respectively.  In addition to the Lease Agreements at issue in this case, Lyon and bioMérieux had entered into nine other previous lease agreements dating back to December 2002.

Each Lease Agreement contains the same forum-selection clause providing that the parties consent to jurisdiction and venue in any state or federal court in the State of

---

[1]     Specifically, three of the four Lease Agreements identify PST as the vendor; the fourth Lease Agreement does not list anyone as the vendor.

4

Minnesota.  Specifically, the forum-selection clauses provide:

> This agreement will be deemed fully executed and performed in the State of Minnesota upon signing by the Lessor [Lyon] and will be governed by and construed in accordance with Minnesota law.  You expressly consent to jurisdiction and venue of any state or federal court in the State of Minnesota and waive right to trial by jury for any claim or action arising out of or relating to this Agreement or the Equipment.  You waive right of defense of inconvenient forum.

(Compl., Exs. A–D.)

On January 30, 2007, Lyon filed this lawsuit asserting claims for replevin and unjust enrichment against bioMérieux.[2]  In addition, Lyon asserts claims for misrepresentation and negligent misrepresentation against PST.  In particular, Lyon alleges that PST misrepresented that "all the required and requested equipment had been delivered and that all of the equipment delivered was compliant."  (Compl. ¶ 27.) Further, Lyon contends that when PST made these alleged misrepresentations, PST "knew that certain of the equipment described in the leases was not delivered or non conforming equipment delivered, that some of the equipment was exchanged without notice to [Lyon] and that [PST] would be making or had made payments on said Leases all of which violates the representations as made by PST to [Lyon]."  (*Id.* ¶ 28.)

In its Answer, Cross-Claims, and Third-Party Complaint ("Third-Party

---

[2]     Although the Complaint does not specifically contain a breach-of-contract claim, Lyon alleges in the Complaint that "a contractual relationship existed between Plaintiff and Defendant bioMérieux" with respect to certain disputed leases, and that "bioMérieux is in default under said Leases by its failure to make the payments required thereby." (Compl. ¶¶ 3, 6.)

Complaint"), bioMérieux alleges that since 1995, it has used photocopiers and related services and equipment supplied by various vendors under agreements negotiated by Waddell. Moreover, bioMérieux contends that Waddell personally negotiated each of the purported Lease Agreements at issue. BioMérieux contends that in negotiating the purported Lease Agreements, Waddell represented to bioMérieux that the leases were for Minolta controller boxes that called for payments of $75 per month and specified lease terms of either six or eight months. BioMérieux contends that it executed the purported Lease Agreements based on its long-standing business relationship with PST and Waddell's assurance that PST would complete the Lease Agreements consistent with the terms that Waddell had represented.

However, bioMérieux alleges that after its representatives signed the purported Lease Agreements, but before Waddell faxed these agreements to Lyon, Waddell altered the purported Lease Agreements by increasing the lease term and/or the amount of each payment and by adding equipment that bioMérieux had not agreed to lease. For example, bioMérieux's Exhibit 4 is a lease agreement signed by bioMérieux on October 21, 2004, which calls for six payments of $75 per month. The lease agreement does not contain any items in the field reserved for the description of the leased equipment because, according to bioMérieux, it relied on Waddell's alleged verbal representation that he would complete the description of the leased equipment consistent with the parties' negotiations. BioMérieux alleges that Exhibit 4 is the earlier version of the purported Lease Agreement found at Exhibit A to Lyon's Complaint and reflects how Exhibit A appeared before

6

Waddell allegedly altered it.  Specifically, bioMérieux alleges that Waddell changed the lease term on Exhibit 4 from "6" to "60" months and changed the amount of each payment from "$75" to "$8175" per month.  Additionally, bioMérieux alleges that Waddell added fifty Minolta products to the description of the leased equipment as reflected in Exhibit A.

Notwithstanding the provision in the Lease Agreements that directed bioMérieux to make payments directly to Lyon, bioMérieux contends that it made payments to Durham Laundry Company ("DLC"), a company for which Waddell has been employed and which was initially part of the same corporate structure as PST.  BioMérieux alleges that DLC, in turn, made payments to PST, and that PST or DLC made payments to Lyon on behalf of bioMérieux.  BioMérieux alleges that it made payments to DLC according to the terms of the unaltered lease agreements until May 2006, when Waddell informed bioMérieux that DLC had stopped paying him for his services at bioMérieux.  BioMérieux alleges that PST made payments to Lyon according to the purported Lease Agreements until approximately August 2006.  BioMérieux asserts cross-claims of common-law fraud, unfair trade practices under North Carolina law, and unjust enrichment against PST and Waddell.

BioMérieux now moves the Court for an order transferring venue to the United States District Court for the Middle District of North Carolina.  PST and Waddell move the Court to dismiss all claims against them for lack of personal jurisdiction and, alternatively, to transfer venue to the United States District Court for the Middle or

7

Eastern Districts of North Carolina. Additionally, PST and Waddell move the Court to dismiss Lyon's and bioMérieux's fraud-based claims for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).

## DISCUSSION

## I.     Motions to Dismiss for Lack of Personal Jurisdiction

PST and Waddell assert that the Court should dismiss all claims, counterclaims, cross-claims, and third-party claims against them because the Court lacks personal jurisdiction over them.

### A.     Standard

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie

8

showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

### B.    Requirements for Establishing Personal Jurisdiction

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process.  *See id.* (citing *Northrup King*, 51 F.3d at 1387). However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied.  *Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).  Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards.  *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  It is essential in each case that there be some act by which the defendant purposefully avails

9

itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether the defendants' contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418–19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *See Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg.*

*Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995).  The third factor

distinguishes between specific and general jurisdiction.  *See Digi-Tel*, 89 F.3d at 523 n.4

(citing *Wessels*, 65 F.3d at 1432, n.4).  Both Lyon and bioMérieux assert that the Court

has specific personal jurisdiction over PST and Waddell.  In addition, Lyon asserts that

the Court has general personal jurisdiction over PST and Waddell.

> **C.    Whether Lyon and bioMérieux Have Made a Prima Facie Showing of Personal Jurisdiction**

PST and Waddell assert that their contacts with Minnesota are insufficient to

support the exercise of personal jurisdiction.  PST and Waddell point out that PST is a

North Carolina corporation with its only office located in Raleigh, North Carolina, and

that Waddell is a citizen of North Carolina and resides in Raleigh, North Carolina.  PST

and Waddell contend that they do not conduct business in Minnesota because PST

procures and services office equipment primarily in North Carolina.  Finally, PST and

Waddell contend that Waddell's one "social visit" to Minnesota is not the type of contact

from which Waddell or PST could anticipate being haled into court in Minnesota.

Additionally, PST and Waddell contend that the cause of action is not related to

PST's and Waddell's contacts with Minnesota.  Instead, PST and Waddell assert that the

conduct complained of arose out of PST's and Waddell's alleged conduct in

North Carolina.  Further, PST and Waddell contend that it is inconvenient for the majority

of the parties—Waddell, PST, and bioMérieux—to litigate in Minnesota because these

parties all reside and conduct business in North Carolina.

In response, Lyon contends that general personal jurisdiction exists over PST and Waddell because PST and Waddell have engaged in an extensive and ongoing business relationship with Lyon.  Additionally, Lyon and bioMérieux assert that this Court has specific personal jurisdiction over PST and Waddell because PST and Waddell have purposely directed their activities at a resident of the State of Minnesota and because the litigation results from alleged injuries that arise out of or relate to those activities. Specifically, Lyon and bioMérieux contend that PST purposely directed activities at Lyon by soliciting Lyon to fund the four Lease Agreements at issue in this case.  Further, Lyon and bioMérieux contend that these Lease Agreements form the basis of this lawsuit because the alleged misrepresentations made by PST as part of the proposals for approval and funding directly resulted in Lyon initiating this lawsuit.

The Court finds that PST and Waddell's extensive and ongoing business relationship satisfies the requirement of continuous and systematic contacts with the state of Minnesota such that this Court can exercise general personal jurisdiction over PST and Waddell.  Since 2001, PST has proposed to Lyon 142 separate lease transactions, and Lyon has ultimately funded seventy-six of those during the course of the parties' relationship.  Further, the seventy-six lease transactions resulted in PST receiving in excess of $3.2 million in revenue from Lyon.  The extensive relationship is bolstered by the Vendor Agreement that the parties entered into in February 22, 2005, which provides Lyon with the first right to review all of the transactions where a customer approaches PST for lease financing of copiers and other related office equipment.

12

The Court rejects PST's assertion that it did not conduct business in Minnesota. By submitting proposed lease agreements for Lyon to finance, PST conducted business in Minnesota. The fact that PST supplied equipment to customers in North Carolina does not negate the fact that PST conducted business with Lyon. Once Lyon accepted PST's proposals, Lyon funded the leases and thereby sent money to PST. In addition, Waddell visited Lyon's home offices in Minnesota during this relationship. Although Waddell may not have proposed any transactions while in Minnesota, Waddell's visit was in furtherance of the ongoing business relationship with Lyon.

In addition to finding PST and Waddell's contacts sufficient, the Court finds that Minnesota has an interest in this lawsuit given the amount of money Lyon purportedly spent to fund the Lease Agreements. Finally, the Court finds that the convenience-of-the-parties factor weighs in favor of establishing personal jurisdiction given Lyon's choice to litigate in the state in which it resides. Thus, viewing the evidence in the light most favorable to Lyon and bioMérieux, and reviewing the applicable factors, the Court finds that Lyon and bioMérieux have made a prima facie showing of general personal jurisdiction.

Moreover, the Court finds that it can also exercise specific personal jurisdiction over PST and Waddell. PST and Waddell purposefully availed themselves of the privileges and benefits of Minnesota by doing business with Lyon. Specifically, PST and Waddell presented Lyon with the four Lease Agreements for approval and funding—two of which were sent after Lyon and PST entered into the Vendor Agreement. And these

13

Lease Agreements give rise to the allegations in this lawsuit.  Thus, viewing the evidence in the light most favorable to Lyon and bioMérieux, the Court finds that Lyon and bioMérieux have made a prima facie showing of specific personal jurisdiction. Accordingly, the Court denies PST and Waddell's motion to dismiss for lack of personal jurisdiction.

## II.    Motions to Transfer Venue

Alternatively, PST and Waddell contend that the Court should transfer venue to the United States District Court for the Middle or Eastern Districts of North Carolina pursuant to 28 U.S.C. § 1404(a).  In addition, bioMérieux also requests that the Court transfer venue to the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) states:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Generally, transfer under section 1404(a) "should not be freely granted."  *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds, Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir. 1990).  The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant.  *United Mortg. Corp. v. Plaza Mortgage Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994).

As a preliminary matter, the venue to which transfer is requested must be one in which the suit could have originally been sought.  28 U.S.C. § 1404(a); *Van Dusen v.*

14

*Barrack*, 376 U.S. 612, 616 (1964). Additionally, pursuant to section 1404(a), the Court must consider "a number of case-specific factors," such as the presence or absence of a forum selection clause, convenience of the parties and witnesses, access to sources of proof, and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Here, the parties do not dispute that venue in the Middle or Eastern Districts of North Carolina are proper. Therefore, the Court will address the other case-specific factors.

### A.     Validity of the Forum-Selection Clause

BioMérieux asserts that the forum-selection clause in the Lease Agreements is invalid and therefore cannot be enforced. In general, forum selection clauses are presumed valid. *Stewart Org.*, 487 U.S. at 31; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–10 (1972); *Knutson v. Rexair, Inc.*, 749 F. Supp. 214, 217 (D. Minn. 1990). However, courts will not enforce forum-selection clauses if they are unjust or unreasonable or invalid for reasons such as fraud or overreaching. *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750 (8th Cir. 1999) (citing *M/S Bremen*, 407 U.S. at 15).

BioMérieux contends that the purported Lease Agreements are void in their entirety because both bioMérieux's and Lyon's signatures on each of the Lease Agreements were procured by Waddell and PST's fraudulent misrepresentations regarding the essential terms of the bargain to which each intended to agree. BioMérieux contends that there was never a meeting of the minds between it and Lyon and therefore asserts that no contract was ever formed. BioMérieux characterizes this type of fraud as

15

"fraud in the factum" as opposed to "fraud in the inducement" and asserts that, as such, the purported Lease Agreements are void.

"Fraud in the factum" is "[f]raud occurring when a legal instrument as actually executed differs from the one intended for execution by the person who executes it, or when the instrument may have had no legal existence." *Black's Law Dictionary* 671 (7th ed. 1999). "Fraud in the inducement," on the other hand, is "[f]raud occurring when a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved[.]" *Id.* Fraud in the factum renders an instrument entirely void, whereas fraud in the inducement merely renders the note voidable. *Fed. Deposit Ins. Corp. v. Kratz*, 898 F.2d 669, 671(8th Cir. 1990) (citing *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86 (1987)).

Here, bioMérieux has set forth specific evidence to support its contention that the fraud alleged constitutes fraud in the factum. Specifically, bioMérieux contends that, in each Lease Agreement, it believed that it was signing a lease for a term of six to eight months for a single controller box, for $75 per month, as evidenced by the leases it submitted. In contrast, bioMérieux points to the purported Lease Agreements attached to Lyon's Complaint as evidence that Lyon believed it was signing leases for terms of forty-six to sixty months, for numerous pieces of equipment, valued between $31,050 and $642,000 each. Thus, based on bioMérieux's substantiated allegations, there was never a meeting of the minds between bioMérieux and Lyon as to the essential terms of the Lease Agreements. Therefore, the entire contract is rendered void for purposes of this motion.

As such, the forum-selection clause in the purported Lease Agreements is presumptively invalid and therefore unenforceable. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000–01 (11th Cir. 1986) (reversing a district court order compelling arbitration and holding that an arbitration provision in a contract could not be given effect where plaintiffs made a substantiated allegation of fraud in the factum). Thus, the Court will analyze the factors under section 1404(a) without giving effect to the forum-selection clause in favor of Minnesota.

### B.     Factors under Section 1404(a)

#### i.     Convenience of Parties

A presumption in favor of a plaintiff's choice of forum exists. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen*, 376 U.S. at 646).

PST, Waddell, and bioMérieux assert that the convenience of the parties favors transfer to North Carolina because all Defendants reside and/or conduct business in North Carolina. PST, Waddell, and bioMérieux also contend that the majority of events giving rise to the claims arose in North Carolina. Specifically, PST, Waddell, and bioMérieux assert that the true nature of this litigation overwhelmingly concerns facts

17

relating to the course of performance between PST and bioMérieux and in the

negotiations of the Lease Agreements.  In response, Lyon asserts that PST, Waddell, and

bioMérieux merely attempt to shift the inconvenience of travel from Defendants to Lyon.

Without relying on the forum-selection clause, the Court finds that transferring

venue to North Carolina would merely shift the inconvenience to Lyon.  Here, Lyon

chose to bring this lawsuit in its home state where it can most conveniently litigate its

claims.  Although a majority of facts giving rise to the claims in this lawsuit may have

occurred in North Carolina, the Court does not find that this factor overcomes the

presumption in favor of the plaintiff's choice of forum.  Further, there are some facts

giving rise to the claims in this lawsuit that did occur in Minnesota.  Therefore, the Court

finds that this factor does not weigh in favor of transfer.

### ii.    Convenience of Witnesses

The convenience of witnesses is an important factor for the Court and the parties

because it determines the "relative ease of access to sources of proof."  *Nelson v. Master*

*Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) (quotations omitted).  In

considering the issue of convenience to witnesses, courts have focused on a number of

factors including the number of non-party witnesses, the location of all witnesses, and the

preference of courts for live testimony as opposed to depositions.  *Graff*, 33 F. Supp. 2d

at 1121 (citing *Van Dusen*, 376 U.S. at 646).  Mere numbers of witnesses are not

determinative when considering the convenience-of-witnesses factor.  *Id.* at 1121–22.

BioMérieux has submitted the affidavits of four employees whom it expects to call

at trial and notes that each of these witnesses resides in North Carolina.  BioMérieux

contends that it would be time-consuming and costly to require these witnesses to miss

work and to travel to Minnesota for trial.  PST is comprised of three employees, including

Waddell, and asserts that it expects all three employees to testify at trial.  Additionally,

PST, Waddell, and bioMérieux contend that the documents and equipment subject to the

Lease Agreements are located in North Carolina.  Lyon, on the other hand, has submitted

the affidavits of two employees located in Minnesota—the Director of Operations and a

Collection Manager—that it expects will testify in this case.

BioMérieux has specifically identified four North Carolina witnesses and Lyon has

identified two Minnesota witnesses.  Other than identifying Waddell as a witness, PST

has not named its other two employees nor indicated what those employees might testify

about.  Thus, PST has specifically identified one North Carolina witness.  In sum, Lyon

has identified two witnesses from Minnesota and bioMérieux and PST have identified a

total of five witnesses from North Carolina.  All of these witnesses are either a party or an

employee of a party to this lawsuit.  Although mere numbers of witnesses is not

determinative of this factor, the Court notes that there are a few more North Carolina

witnesses than Minnesota witnesses.  In addition, more evidence is located in

North Carolina.  Given this, the Court finds that this factor weighs slightly in favor of

transfer.

  **iii.  Interests of Justice**

The Court must also evaluate what venue will best promote the interests of justice.

19

*Graff*, 33 F. Supp. 2d at 1122.  A number of relevant considerations include relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, and the plaintiff's choice of forum.  *Id.*

PST and Waddell assert that it would be a financial hardship for them to proceed with this matter in Minnesota because PST is a small company with only three employees. PST and Waddell also point out that bioMérieux has asserted claims against both PST and Waddell under North Carolina statutory law.  Additionally, PST, Waddell, and bioMérieux contend that the civil trial docket in the Middle District of North Carolina is less congested than the docket in the District of Minnesota.  BioMérieux also contends that the Court should afford little deference to Lyon's choice of forum because the operative events giving rise to the lawsuit took place in North Carolina.

In response, Lyon contends that judicial economy will be served by maintaining this action in Minnesota because the Court can adjudicate all of the parties' claims here. Lyon also contends that courts here can better apply the law of this state more effectively than those sitting elsewhere.  Lyon also asserts that the parties' respective ability to bear the expense of litigation does not require transfer.  Additionally, Lyon contends that if any party will have difficulty enforcing a Minnesota judgment, it will be Lyon, but notes that it has voluntarily undertaken such a risk by filing its complaint in Minnesota.

The Court finds that the interests-of-justice factors do not weigh in favor of transfer.  Judicial economy will be served by maintaining this action in Minnesota

20

because the Court can adjudicate all of the parties' claims here.  The Court has

determined that it may exercise personal jurisdiction over PST and Waddell and

bioMérieux conceded at oral argument that the Court may exercise personal jurisdiction

over it.  In addition, although the civil trial docket in the middle district of North Carolina

may be less congested than the docket in this district, the Court assures the parties that

they will experience no delays in this Court.  Further, the Court can fairly apply both

Minnesota and North Carolina law if necessary.

Additionally, the parties' respective ability to bear the expense of litigation does

not require transfer.  BioMérieux is a large company and can therefore absorb the cost of

litigation.  Although PST is a relatively small company, Waddell is a key witness who

would be forced to miss work due to the litigation regardless of where the case is

adjudicated.  Finally, the Court gives due weight to Lyon's choice of forum.

After analyzing and weighing the section 1404(a) factors in light of the facts of

this case, the Court finds that bioMérieux, PST, and Waddell have not met their burden of

demonstrating that the balance of factors strongly favors their request to transfer the case

to the Middle or Northern Districts of North Carolina.  Therefore, the Court denies the

motions to transfer.

## III.   Motion to Dismiss Fraud Claims

PST and Waddell assert that the Court should dismiss Lyon's and bioMérieux's

fraud claims for failure to plead with proper specificity.  Federal Rule of Civil Procedure

9(b) requires fraud claims to be stated with particularity.  To be sufficiently particular, a

plaintiff must provide the time, place, and content of the fraudulent misrepresentations. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997).  "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (citing *In re Flight Transp. Corp. Sec. Litig.*, 593 F. Supp. 612, 620 (D. Minn. 1984)).

The Court finds that bioMérieux has pleaded its fraud claim with requisite particularity.  Here, in its Third-Party Complaint, bioMérieux specifically identifies Waddell as the individual who made the misrepresentations and who personally negotiated each of the transactions that gave rise to the disputed Lease Agreements.  In particular, bioMérieux alleges that "PST, by and through Waddell, represented to bioMérieux that the disputed leases were leases for relatively inexpensive controller boxes that called for payments of $75 per month and specified lease terms of either six or eight months[]" and that "[s]uch representations were made concurrently or immediately before each lease document was executed by bioMérieux."  (Third-Party Compl. ¶ 15.)

Further, bioMérieux alleges that Waddell fraudulently altered the terms of the lease documents that bioMérieux had signed before faxing these documents to Lyon. BioMérieux also attached copies of the purported unaltered versions of the leases to its Third-Party Complaint.  Additionally, bioMérieux alleges that PST and Waddell attempted to conceal Waddell's alleged wrongdoing by making payments to Lyon according to the terms of the allegedly altered Lease Agreements.  Based on these

22

allegations, the Court finds that bioMérieux's Third-Party Complaint provides PST and Waddell with sufficient notice of its fraud claim. Accordingly, the Court denies PST and Waddell's Motion to Dismiss bioMérieux's fraud claim.

Likewise, Lyon has pleaded its claims with requisite particularity. Lyon identifies Waddell as the person who made the alleged misrepresentations about the Lease Agreements. Lyon specifically alleges that PST misrepresented that "all the required and requested equipment had been delivered and that all of the equipment delivered was compliant." (Compl. ¶ 27.) Further, Lyon contends that when PST made these alleged misrepresentations, PST "knew that certain of the equipment described in the leases was not delivered or non conforming equipment delivered, that some of the equipment was exchanged without notice to [Lyon] and that [PST] would be making or had made payments on said Leases all of which violates the representations as made by PST to [Lyon]." (*Id.* at ¶ 28.) Based on these allegations, Lyon's Complaint provides PST and Waddell with sufficient notice of its claims for misrepresentation and fraudulent misrepresentation. Accordingly, the Court denies PST and Waddell's Motion to Dismiss these claims.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Defendant bioMérieux's Motion to Transfer Venue to the United States District Court for the Middle District of North Carolina (Doc. No. 20) is **DENIED**.

2.     Defendant PST's Motion to Dismiss or, in the Alternative, Transfer Venue

(Doc. No. 10) is **DENIED**.

3.      Defendant PST's Motion to Dismiss Cross-Claim (Doc. No. 23) is

**DENIED**.

4.      Third-Party Defendant Waddell's Motion to Dismiss or, in the Alternative,

Transfer Venue (Doc. No. 30) is **DENIED**.


Dated:  July 20, 2007              s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of United States District Court